# CLARK FORK COALITION, ROCK CREEK ALLIANCE, INC., CABINET RESOURCE GROUP, MONTANA ENVIRONMENTAL INFORMATION CENTER, AND TROUT UNLIMITED,
### Plaintiffs/Appellants,
### v.
# MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY,
### Defendant/Respondent.

No. DA 06-0744.
Decided July 25, 2007.
2007 MT 176.
338 Mont. 205.
164 P.3d 902.

## OPINION AND ORDER

¶1   Revett Silver Company (Revett) has filed a motion to dismiss the appeal herein. Appellants Clark Fork Coalition, et al. (Coalition), oppose the motion. Respondent Montana Department of Environmental Quality (DEQ) has not filed a response to the motion to dismiss.

¶2   This matter arises out of a challenge to a pollution discharge elimination system permit granted by DEQ to Revett for use at its proposed Rock Creek Mine in Sanders County. The Coalition filed an action challenging DEQ's issuance of the permit on January 28, 2002, and Revett was not named in the action. The Coalition and DEQ ultimately agreed to present the matter for resolution on summary judgment, and the Coalition moved for summary judgment in December 2004. On January 31, 2005, three years after the suit was filed and while the Coalition's summary judgment motion was pending, Revett sought to intervene as a defendant in the matter. On July 12, 2005, the First Judicial District Court, Lewis and Clark County, Honorable Jeffrey Sherlock presiding, denied Revett's motion to intervene as untimely, noting that Revett had "actual notice of the action shortly after the complaint was filed, more than three years ago" and had "ample notice and opportunity to file its motion to intervene at an earlier stage in the proceedings." After being denied intervention, Revett did not further participate in the litigation, nor seek supervisory control of the proceeding by this Court.

¶3   After briefing and argument, the District Court granted summary judgment to DEQ on Count I of the Coalition's amended complaint, to the Coalition on Count II, and ordered that Count III be set for trial. The parties thereafter agreed that all of the facts regarding Count III had been fully established and that a trial would not further develop

the claim. Further, the Coalition took the position that the District Court's decision on Count I would direct a favorable outcome to DEQ on Count III. Therefore, on September 12, 2006, the parties stipulated to the entry of final judgment in favor of DEQ on Counts I and III and in favor of the Coalition on Count II. The District Court accepted the stipulation and entered final judgment accordingly.[1]

¶4 The Coalition served notice of entry of judgment on DEQ pursuant to M. R. Civ. P. 77(d) on October 13, 2006. DEQ failed to serve its notice of entry of judgment despite also being a prevailing party. On November 20, 2006, the Coalition filed a notice of appeal, challenging the granting of summary judgment to DEQ on Count I. The Clerk of District Court served the notice of appeal on DEQ and also sent a copy to the Clerk of this Court pursuant to M. R. App. P. 4(d). The Coalition filed its opening brief with this Court on March 5, 2007, followed by the filing of DEQ's answer brief on April 3, 2007, and the Coalition's reply brief on April 23, 2007, and on that day the briefed case was forwarded to this Court.

¶5 However, no entity served a notice of entry of judgment upon Revett. On May 30, 2007, some thirty-seven days after the final brief was filed herein and the matter forwarded to this Court by the Clerk, and after learning about the judgment from "casual conversation," Revett filed this motion to dismiss the appeal on the ground it had not been served with a notice of entry of judgment under M. R. Civ. P. 77(d).

¶6 Citing *Sportsmen for I-143 v. Fifteenth Jud. Court*, 2002 MT 18, 308 Mont. 189, 40 P.3d 400, Revett notes that an order denying a motion to intervene is not separately appealable under M. R. App. P. 1 and, therefore, an appeal could not be taken from the order denying its motion for intervention until after entry of final judgment. As such, Revett contends that both the Coalition and DEQ violated Rule 77(d) by failing to serve Revett with notice of final judgment. It notes that Rule 77(d) directs "[w]ithin 10 days after entry of judgment or an order in an action in which an appearance has been made, notice of such entry ... shall be served by the prevailing party upon all parties who have made an appearance ..." and argues that it made an appearance by virtue of its motion to intervene, was therefore a "party," and was

---

[1] Instead of the term "Count," the District Court's order referred to "Outfall" Nos. 1, 2 and 4, in disposing of the issues before it. The distinction between these terms is not relevant to the disposition of this motion, and neither side disputes the use of the above terms.

entitled to notice. Revett further argues that the failure to comply with Rule 77(d) bars the contemplated transfer of jurisdiction from the District Court to this Court, and, therefore, this Court must dismiss the appeal and remand to the District Court for service of notice of judgment upon it, and for the appeal process to start anew.

¶7 The Coalition responds that Revett's motion provides no grounds to dismiss this appeal, because the Coalition fully complied with Rule 77(d) by serving notice of entry of judgment on DEQ, the only other "party" in the litigation. The Coalition argues that, while Revett may have made an appearance in the District Court, it never became a "party," and therefore was not entitled to service of the notice of judgment under Rule 77(d). Although the Coalition acknowledges that Revett had the right to appeal the District Court's denial of its application to intervene, it urges this Court to nonetheless deny Revett's request as untimely or lached because, as a non-party, Revett bore the burden of keeping itself apprised of the progress of the litigation and filing a timely notice of appeal, without further notice. Alternatively, the Coalition contends that if we determine that Revett's failure to be served with formal notice of the judgment was a legal harm that entitles Revett to relief, this Court should set a separate briefing schedule on Revett's intervention issue and decide that question first, as the outcome would determine whether this Court could take up the remaining appeal or if the matter would need to be remanded for re-initiation of the proceeding in the District Court, with Revett participating.

¶8 Both sides correctly recognize that "[w]e have noted that while an order denying a motion to intervene is not separately appealable under Rule 1, M.R.App.P., the proper appeal from such an interlocutory order lies after entry of final judgment." *Sportsmen*, ¶ 5. This Court has not, however, previously addressed the procedure to be followed when appealing a denial of an application for intervention, specifically, whether an unsuccessful intervenor is entitled to be served with notice of entry of judgment pursuant to Rule 77(d).

¶9 A civil appeal from the district court must be filed "within 30 days from the date of the entry of the judgment or order appealed from." M. R. App. P. 5(a)(1). Further, "[i]t is the filing of the notice of entry of judgment that begins the running of the time limits for filing a notice of appeal." *In re Marriage of Robertson*, 237 Mont. 406, 411, 773 P.2d 1213, 1216 (1989) (citations omitted). M. R. Civ. P. 77(d) requires notice of entry of judgment to be served by the prevailing party upon all parties who have made an appearance in the cause. *Robertson*, 237

Mont. at 411, 773 P.2d at 1216 (citing *Hankinson v. Picotte*, 235 Mont. 143, 766 P.2d 242 (1988)). Specifically, M. R. Civ. P. 77(d) states:

Within 10 days after entry of judgment or an order in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or order or general description of the nature and amount of relief and damages thereby granted, shall be *served by the prevailing party upon all parties who have made an appearance*, but any other party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. [Emphasis added.]

If no notice of entry of judgment has been served on the losing party, the right to appeal has not expired. *Robertson*, 237 Mont. at 411, 773 P.2d at 1216 (citation omitted).

¶10 M. R. Civ. P. 24 governs intervention. As the Minnesota Court of Appeals has stated with regard to that state's similar intervention rule, "Rule 24 is designed to protect nonparties from having their interests adversely affected by litigation conducted without their participation." *Gruman v. Hendrickson*, 416 N.W.2d 497, 500 (Minn. App. 1987). However, the language of the rule carefully distinguishes between an "applicant" or "person desiring to intervene" and the "parties" to the action:

(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the *applicant* claims an interest relating to the property or transaction which is the subject of the action and the *applicant* is so situated that the disposition of the action may as a practical matter impair or impede the *applicant's* ability to protect that interest, unless the *applicant's* interest is adequately represented by existing *parties*.

(b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an *applicant's* claim or defense and the main action have a question of law or fact in common. When a *party* to an action relies for ground of claim or defense upon any statute or executive order administered by a state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the

rights of the original *parties*.

**(c) Procedure.** A *person* desiring to intervene shall serve a motion to intervene upon the *parties* as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute gives a right to intervene. [Emphasis added.]

A plain reading of this Rule does not support Revett's argument that it became a "party" by appearing in the action to seek intervention.

¶11 Further, authority we find persuasive likewise illustrates that a failed intervenor does not become a party to the action. In *Manufacturers Consol. Service v. Rodell*, 42 S.W.3d 846, 867 (Tenn. Ct. App. 2000), the Tennessee Court of Appeals stated that when a court denies a motion to intervene "the movant's request to participate in the litigation is denied, and the movant never becomes a party to the original action." *Rodell*, 42 S.W.3d at 867. In *Graham v. City of Anchorage*, 364 P.2d 57 (Alaska 1961), the city commenced an action against its clerk seeking a declaratory judgment that there was no obstacle to proceeding with the annexation election. The appellants, who opposed the annexation, filed a motion to intervene, which was denied by the lower court. The appellants then attempted to appeal following the entry of the lower court's judgment allowing the election to proceed. The Alaska Supreme Court held they had no right to appeal from the judgment on the merits:

> *[A]ppellants have never been parties to this action, since the court had denied their motion to intervene.* Hence, they had no right to appeal from the judgment in order to obtain review of the merits of the controversy between those who were parties. The only relief that appellants could seek from this court was a review of the trial court's ruling which prevented them from becoming parties to the action. [Emphasis added.]

*Graham*, 364 P.2d at 59. These cases clearly demonstrate that successful intervenors become parties to the litigation, and unsuccessful intervenors do not.

¶12 ■■■ While we recognize that these cases do not specifically address whether an unsuccessful intervenor is entitled to notice of entry of judgment, they are nonetheless illustrative regarding the status held by an unsuccessful intervenor. An unsuccessful intervenor is not a "party" and thus, under the clear distinctions made in Rule 24 and the clear language of Rule 77(d), is not entitled to service of notice of entry of judgment. *See* M. R. Civ. P. 77(d) (notice must be served "upon all

*parties* who have made an appearance" (emphasis added)). Although Revett emphasizes the Rule's application to those who have "made an appearance," this argument is unavailing. That phrase, as the Advisory Committee's Note to the October 9, 1984, amendment for M. R. Civ. P. 77(d) explains, was adopted simply to eliminate confusion arising under the former text, which required service upon all "adverse parties" in the action. Thus, it is clear that, in order to conclude that an unsuccessful intervenor is a party entitled to service of notice of judgment under Rule 77(d), this Court would be required to ignore the distinctions made by the rules and to override the plain language used therein.

¶13 ■ Citing Article II, Sections 16 and 17, of the Montana Constitution, Revett next argues that it is entitled to service of notice of judgment as a matter of "settled procedural due process." We conclude, however, that Revett's due process rights were not violated by the failure to receive service of notice of judgment, nor did that failure prevent the transfer of jurisdiction from the District Court to this Court.

¶14 First, Revett did not avail itself of the option of seeking supervisory control with this Court when its motion to intervene was denied. Indeed, it was upon this very issue—the district court's denial of a motion to intervene—that this Court granted supervisory control and reversed the district court in *Sportsmen. See* ¶¶ 5-6, 20. While Revett argues strenuously that *Sportsmen* is distinguishable and that the denial of its motion to intervene was not eligible for review under supervisory control standards, Revett could have just as easily argued the other way under those standards and sought this Court's review. However, it did not. "[S]upervisory control may be used to prevent extended and needless litigation." *Sportsmen,* ¶ 5 (citing *First Bank System v. District Court,* 240 Mont. 77, 84-85, 782 P.2d 1260, 1264 (1989). While we recognize that Revett was not legally required to challenge the ruling in this manner, nor was Revett entitled, as a matter of right, to this Court's exercise of supervisory control, it was nonetheless an option available to Revett, which it had a right to pursue.

¶15 In the absence of supervisory control, Revett could have monitored the litigation and kept itself apprised of the case's progress, as an unsuccessful intervenor must do in order to take a timely appeal following final judgment. This proceeding was conducted in public and the record thereof was continually available. Even a modicum of diligence would have advised Revett of the case status. Yet, the record

before us reflects no effort by Revett to check the filing of documents in the court file or to make inquiry of the clerk's office; to request that the parties provide notice of a final judgment, particularly the DEQ, whose interest in the litigation was parallel to that of Revett; or to request the clerk to provide notice or copies of the court's orders and judgments. Ultimately, the responsibility for monitoring the matter rested with Revett, but it made no effort whatsoever to further this duty.

¶16 Revett's actions with regard to the appeal are consistent with its actions in the District Court. The filing of this action by the Coalition on January 28, 2002, generated substantial publicity. Revett was well aware of the suit and, according to its District Court filings, conducted discussions about the case, concluded that its interests were adequately protected by the DEQ, and decided not to seek entry into the litigation. Then, three years after the litigation was commenced, after discovery had been closed for five months and oral argument scheduled, Revett moved to intervene on January 31, 2005. After the District Court denied its motion as untimely[2] on July 12, 2005, Revett failed to keep itself informed and overlooked the filing of the judgment, the filing of the appeal, and the completion of appellate briefing in this Court, before resurfacing to file a motion to dismiss herein on May 30, 2007.

¶17 ■ "There is no absolute standard for what constitutes due process. ... [T]he process due in any given case varies" with the circumstances. *McDermott v. McDonald*, 2001 MT 89, ¶ 10, 305 Mont. 166, ¶ 10, 24 P.3d 200, ¶ 10. Here, due process cannot afford a remedy for irresponsibility. We cannot by rule relieve the citizen's duty to superintend his own affairs. As a nonparty to the litigation, Revett was not entitled to service of notice of entry of judgment, yet was already on notice about the entire proceeding. Revett's obligation, in order to protect its claimed interests, was to monitor the litigation and file a timely appeal following entry of the judgment. Its failure to do so does not divest this Court of jurisdiction to resolve the issues raised by the parties properly before it. Therefore,

¶18 IT IS HEREBY ORDERED that Revett's motion to dismiss the appeal is DENIED.

---

[2] The District Court cited the four-part test this Court has developed for reviewing intervention issues, *Sportsmen* ¶ 7, and denied the motion based upon the first factor, timeliness, concluding that "[Revett's] change of mind on the DEQ's ability to protect its interest does not make its motion a timely one."

¶19 The Clerk is directed to mail a true copy hereof to counsel of record herein, as well as counsel for Revett.

DATED this 24th day of July, 2007.

/S/ JIM RICE

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JOHN WARNER

/S/ BRIAN MORRIS